Denio, J.
The testator bequeathed “ unto the trustees of the institution for the maintenance and instruction of the indigent blind, in the city of New-York,” the sum of $3000; and the sole question in this case is whether the appellants, a corporation under the name and title of “ The New-York Institution for the Blind,” can make title to the legacy. No other person and no other corporation claims to answer the description or be entitled to the legacy as such; and if the appellants cannot take it the gift is void, and the fund passes to the residuary legatees. There is nothing in the language of the bequest which makes it certain or very probable that the testator designed to state the corporate name of the institution for which his bounty was intended. The words may have been meant as a general description and not as the corporate name. It may very well be that he was unacquainted with the title, but at the same time knew the objects and general scope of the institution.. It becomes necessary therefore to ascertain, before attempting to apply the description, what the nature and purposes of the corporation which claims the legacy are. The appellants were incorporated in 1831 by the name which they use in this suit; and the object of the institution is stated in the *86 act to be “for the purpose of instructing children who have been born blind, or who have become blind by disease or accident.” The coloration is made capable of purchasing, holding or conveying any real and personal estate, to a limited amount, “ for the purposes of this incorporation and no other.” Its concerns are to be managed by a board of managers, and a president, vice-president, treasurer and two secretaries, to be chosen annually by the members of the society. No subscription' to stock is provided for, and there is nothing to show how the means were to be obtained to carry out its objects. (Stat. 1831, 256.) In 1834, an act was passed authorizing the managers to receive four indigent blind persons from each senate district, in like manner and at the like expense to the state as provided by law for the indigent deaf and dumb, and they were, to be instructed in some trade or employment carried on in the institution. (Stat. 1834, 581.) In 1836, the institution was authorized and required to receive four additional beneficiaries of the same character from each senate district, upon the same terms; but it was provided that these should be between eight and twenty-five years of age. Twelve thousand dollars were at the same time appropriated from the treasury, to be paid to the managers on condition that they should raise an additional $8000; and the whole was to be applied to the purchase of the premises occupied by the institution, to the erection of a workshop for the blind and for repairs ¡of their buildings. The title of the real estate was to be vested in the managers, meaning probably in the corporation ; and the institution was not to be removed from its then present site for fifty years. (Stat. 1836, 293, 593.) By an act passed in 1839, the legislature authorized the reception, by the institution, of eight similar beneficiaries, and again appropriated $15,000 towards the objects of the institution, on condition that the managers should raise $8000; and in 1845, they appropriated, without condition, $5000 a year for five years. (Stat. 1839,171; Stat. 1845, 43.) *87 The corporation carries on its operations in the city of New-York; and it is proved that there is no other institution or association in that city having any reference to the amelioration of the condition of the blind. The laws respecting the deaf and dumb, referred to in these enactments providing for beneficiaries to be received from the senate districts, contemplate the support of the indigent deaf and dumb persons at the institution provided for them during the course of their tuition. As the blind persons were to be received in like manner and at the like expense, they were of course to be supported by the institution, and the state was to pay a compensation therefor. (3 R. S., 227, 3d ed.; Stat. of 1822, 229, 230, 1, 5, 6; Stat. of 1825, 230, $ 3; Stat. of 1830, 185, § 2.)
With this knowledge of the character of the institution, we are now ready to compare it with the description which the testator has given of his intended legatee. First. He designed the legacy to go to an institution for ameliorating, in some way, the condition of the blind. Second. He supposed such an institution to be in existence in the city of New-York. Third, He supposed its business to be the maintenance as well as the instruction of blind persons. Fourth. He thought that indigent blind persons were wholly or in part the objects of the care of the institution. Fifth. He does not appear to have thought that the benefits intended were limited to children; or, if he did, he did not think that circumstance so prominent as necessarily to be a part of the description of the institution.
In all these features, I think the corporation which claims this legacy completely answers the description which the testator has given. Though the act of incorporation did not refer to indigence as a qualification for the unfortunates who were to be relieved, or provide for the maintenance of those who were to' receive the benefits to be provided; and though it did contemplate children only as the objects of the attention of the institution, the subsequent legislation so far *88 modified the character of the corporation, in these particulars, that when the will was made these several circumstances had all been engrafted upon it, and might well enter into a description of its general scope and purposes. It is of no importance if the qualification of indigence, and the provision for maintenance* and. for the admission of grown persons, were all limited to the state beneficiaries. The, question arises upon the description. It is a question of identity; and the point is whether the legatee can be found and certainly identified by the description contained in the will. The description is not shown, to. be erroneous, though there be a different class, of persons also to be relieved, or if some are-to be instructed merely and not supported. I do not, upon the whole, see how a description comprised in a brief sentence could more accurately have hit the leading particulars which go to define this, corporation, and to distinguish it from all others.
It is well' settled that a devise or bequest to a corporation need not state its corporate name. It is sufficient that the devisee or legatee, whether a natural person or a corporation, is so defined as to be distinguished from every other person. (1 Jarman on Wills, 330; Angel & Ames on Corp., 60;. Counden V. Clerke, Hob., 29, a; Dr. Ayray’s case, 11 Coke, 20, b.) In the last mentioned case, the court resolved that, although it had been said that the name of an incorporation is.like the name of baptism, “ yet, if the person be so described that he may be certainly blown from other persons, the omission,, or in some cases the misprision of the name of baptism, shall not avoid the grant.” Indeed, the numerous cases upon this subject relate to devises and grants where some mistake has been made in attempting to give the name of the corporation, or some circumstance false or. inapplicable has been introduced into the description. Here the true corporate name was not given, and it is not shown that the testator intended to give the name; but, as before remarked, he described this institution with entire accuracy. I do not think it *89 necessary therefore to go over the cases cited at the bar to show how considerable an error may be overlooked or reconciled. There is much solemn trifling in the old books upon this question. (Case of the Corporation of Lynn, 10 Co., 123, a; Bac.. Ab., Capacity C, 2.) It would be a useless labor to review them if I am right in supposing that this testator has not committed any error in describing the intended administrator of his bounty. The will does not state the purpose for which the legacy is. given; but when it is ascertained by provisions in- public' laws that there is but one object to which the legatee can lawfully apply it, it is not a violent presumption that the testator contemplated and. intended that it should be applied, to that object.
I am of opinion that the judgment of the supreme court should be reversed, and the proceedings be remitted to that court with directions to modify the sentence "of the surrogate in such manner that the respondents, who are executors of William How,, be required to pay to the appellant, the New-York Institution for the Blind, the legacy mentioned in the will of said How, with interest thereon commencing one year after the testator’s death.
Parker, J.
The right of the plaintiff to a legacy of $3000, under the will of William How, deceased, is contested by the defendants, who are the residuary legatees-. The only question is whether the plaintiff, whose corporate name is “ The New-York Institution for the Blind,” is entitled to a legacy given to the “ trustees of the institution for the maintenance and instruction of the indigent blind in the city of New-York,” it appearing that there was not, at the time of making the will, and never has been, in the- city of New-York, any other institution for the blind except the plaintiff.
It is conceded that a legacy may be given to a corporation or an individual, either by name or by description. If by the former, the legatee need not be called idem syllable sen. verbis. It is suflicient if it be idem re et sensu. (The Mayor *90 and Burgesses of Lynn, 10 Coke, 124.) I think the misnomer in this case is too great to allow the plaintiff to take the bequest by name, and so far I concur with the learned justice who delivered the opinion in the supreme court. The name is not the same, nor is it the same in substance and meaning, nor is it shown that the plaintiff was known by the name mentioned in the will or was ever called so by the testator. (Leon., 159, cited 10 Coke, 123; 1 Jarman on Wills, 331 1 Vesey, Jr., 266; 3 Vesey, 148; 3 Pick., 232; 2 Dallas, 74; Cro. Eliz., 106; 7 Metc., 416.) I do not think it was the intention of the testator to name the object of his bounty, but to describe it; and it is therefore necessary to ascertain whether the description is sufficient to designate the plaintiff so as to distinguish it from all others. ( Thomas v. Marshfield, 10 Pick., 367.)
Is the plaintiff in fact an institution for the maintenance and instruction of the indigent blind in the city of New-York? It is in the city of New-York, and is therefore within the latter part of the description, but it is denied that it comes within the former part of the description. The plaintiff was incorporated on the 21st of April, 1831 (Laws of 1831, 256), “ for the purpose of instructing children who have been bom blind or who may have become blind by disease or accident.” So far it was only an institution for instructing the blind, and would not be described by the words “ maintenance” and “ indigent.” But in 1834 an act of the legislature was passed (Laws of 1834,581), authorizing the plaintiff “ to receive from each of the then senate districts four indigent blind persons, between eight .and twenty-five years of age, in like manner and at the like expense to the state as is provided by law for the indigent deaf and dumb.” And by subsequent acts (Laws of 1836, 293, 593; Laws of 1839, 171) the number was increased to sixteen from each senate district, making in all one hundred and twenty-eight indigent blind persons to be instructed in the *91 institution. It became, therefore, by these acts, an institution for the “ indigent ” blind.
But the word “ maintenance” is not used in either of these statutes. It will be seen, however, that it was not only contemplated but provided for. These indigent pupils were received in like manner as was provided by law for the, indigent deaf and dumb; and a reference to the statutes providing for the indigent deaf and dumb shows that they were maintained as well as instructed at the expense of the state. The act of 1822 (Laws of 1822, 248, § 5) declares “ that each indigent pupil so received shall be provided with board, lodging and tuition,” to be paid for out of the state treasury.. The act of 1830 (Laws of 1830, 185, $2) provides that “ the yearly expense to be paid out of the treasury .for the support of such pupils shall not exceed the sum of $130 for each pupil.” The preamble of the charter of “ The New-York Institution for the Instruction of the Deaf and Dumb" expressly recites that the object of the institution is represented to be the support and maintenance as well as the instruction of the indigent deaf and dumb. It is evident therefore that the plaintiff was authorized to maintain and instruct the indigent blind, and was employed by the state, for that purpose. Such maintenance became, from that time, if it was not before, one of the objects of the institution, and such it was at the time the will was executed and has continued to be until the present time.
I do not think it is necessary for the plaintiff to show that the maintenance and instruction of the indigent blind were the sole objects of this institution; it is enough if they were among its objects. The fact that indigent blind persons were maintained and instructed there made it an “ institution for the maintenance and instruction of- the indigent blind.!’ The expression seems to me to mean nothing more than “the institution where indigent blind persons are maintained and educated.” And if the latter expression had been used instead of the former, it- would hardly be *92 contended that the description was not applicable to the plaintiff alone, it appearing, as it-plainly does, that there was no other institution in New-York where the blind were maintained and educated. Indeed, I think it is apparent, from the general helplessness of those intended to be relieved, the tenor of the charter and subsequent, acts, and the plan adopted to sustain it, that the principal object of the institution was the relief of the indigent blind,, whose maintenance, was necessarily connected with their instruction.. It was frequently an applicant for state as well as= individual bounty. In 1836 the state gave to the institution $12,000 on condition that the managers should raise $8000; in 1839, $15,000 on condition that the managers should raise $10,000'; and in 1845, $5000 a year for five years. (31 R. S., 239, 3d ed.)
A bequest to the trustees of the institution was a bequest to the institution itself (13 John., 38; 6 Hill, 476; 10 N. H., 123), and it was none the less so because those having charge of it are. called “ managers ” in the charter. They are still trustees and known in law under that name. (1 R. S., 600, §§ 9, 10; 2 R. S., 462, § 33.) My conclusion therefore is;, that the plaintiff was plainly intended and sufficiently described as the object of the testator’s bounty, and that the judgment of the supreme court and the decree of the surrogate should both be reversed, and that the proceedings he remitted, with directions that a decree be. entered in favor of the plaintiff for the amount of the, legacy with costs.
All the judges concurred.
Ordered accordingly.